WILLIAM A. LAND *vs.* G. J. ELLIOT, Administrator of W. Merryman.

A court of equity has jurisdiction to grant a new trial at law, in a case in which the judgment has been obtained by fraud.

In such case, the complainant in equity must clearly establish the existence of the fraud, and show that he has himself, been guilty of no laches.

L. filed his bill in equity, to set aside a judgment at law against him, in favor of W., on the ground that W. had promised him to dismiss the suit at law, for which reason he paid no farther attention to it. The administrator of M. answered, denying the allegations of the bill; the proof failed to show the promise to dismiss the suit at law. Held, that L. was not entitled to relief in equity.

THIS cause is brought to this court by appeal from the chancery side of the Holmes circuit court.

The amount in controversy was under five hundred dollars; and the circuit court had, therefore, concurrent jurisdiction with the superior court of chancery.

The brief of Mr. Brooke exhibits a correct abstract of the pleadings. It was in proof that the intestate of the appellee was in the employment of Thomas Land, deceased, the father of the appellant, as his overseer; that in the beginning of the year 1835, Thomas Land paid him over three hundred dollars, to enable him to visit Rankin county; that upon his return to his employer's plantation, he stated to the appellant that he had not used the money, and would have no use for it, and at the same time handed it to him. W. A. Land, at that time, was in the employ of his father, and in the habit of receiving and paying out money for him; that after Mr. Land's death, Merryman sued W. A. Land for the amount so paid him, but stated to the witness that he did not expect to recover in that suit, but hoped to obtain the money sooner through the means of it; that Merryman went to New Orleans to attach W. A. Land's cotton, but failed.

It was also in proof that Merryman had told one of the witnesses, " that he had, or intended, (witness cannot state posi-

tively which) withdrawing the suit against W. A. Land, and going down to New Orleans to attach his cotton."

This was all the testimony it is deemed essential to notice.

The circuit court, upon final hearing, dismissed the bill, and an appeal was allowed to this court.

*Brooke*, for appellant.

. The court below erred in dismissing the bill of the appellant on the state of facts as presented by the pleadings and proof. The bill states that William Merryman, in his lifetime, had brought suit against appellant at law, on an open account, for the sum of three hundred and sixty dollars—states to be for so much loaned money; that sometime after Merryman had commenced said suit, appellant had a conversation in regard to it with him, and that Merryman then told appellant that he had dismissed it; and that said Merryman did, at different times, state to several other individuals, that he did not believe appellant was liable for the said claim sued on—but that he would try to scare it out of him. Bill further states that appellant does not, nor ever did, owe Merryman said sum of money; that in consequence of the statement made as aforesaid, by Merryman to appellant, to wit: that he had dismissed said suit, appellant made no defence at law, believing that the suit had been dismissed; that at the October term, 1839, of Holmes circuit court, a judgment by default was had against appellant entirely without his knowledge; that in March, 1841, said Merryman died, and said suit, then standing on a writ of inquiry, was revived in the name of Elliot, as administrator, who prosecuted the same to final judgment, still without the knowledge of appellant. The bill prays for a new trial, &c.

The answer of Elliot admits the said judgment, &c., as stated in the bill, but denies any knowledge of the statement made by Merryman to appellant in regard to dismissing the suit—but states that he, Elliot, had heard Merryman say in his lifetime, that appellant owed him money, and talked of going to New Orleans to attach his cotton.

The allegations in the bill in reference to the statements made

by Merryman to other persons, are not answered, the respondent only thinking that the appellant was mistaken.

The answer denies that Merryman attempted to secure said debt out of respondent—but states that he brought his suit in the usual way, &c., and charges the want of defence was occasioned by the neglect of appellant or his counsel; that at the court at which final judgment was obtained, appellant made application for a new trial, and urges the neglect of his counsel as a ground for relief. The answer further goes on to deny the allegation in the bill, that appellant did not owe the money, and denies that appellant failed to defend at law in consequence of the statements of Merryman—and also that appellant was not aware of the final judgment; answer also states, that one of the appellant's counsel made to the court, at the time of judgment, a long affidavit, the object of which was to procure a new trial.

This is the substance of the material allegations of the bill and answer. The depositions, which make part of the record, show conclusively that appellant did not owe the debt to Merryman, and also that Merryman, on more than one occasion, admitted such to be the fact. The only question then is, has the appellant shown a sufficient excuse for not defending at law? The excuse, as alledged in the bill, is that Merryman stated that he should dismiss his suit, and that this statement had prevented applicant from putting in a plea. This allegation, it is true, is not positively proven; but Worley, one of the witnesses, states that Merryman had told him that he intended withdrawing his suit, and that he only intended by said suit to try and scare the money out of appellant. Merryman having openly stated this fact to others, it is very probable he may have stated the same to appellant himself. Johnson and Worley both testify as to the nature of the transaction, and show conclusively that appellant did not owe the debt on which said suit was brought.

W. W. Walton testifies that appellant was not in attendance in court when judgment was rendered against him. But the allegation in the bill of the reason for not defending at law, is not, nor could be denied positively by the answer. The re-

spondent could not, and does not, speak of his own knowledge, answering as he did for another person. Such denial, therefore, could not weigh against the direct allegation of the bill, supported as it is by very strong circumstantial proof. The affirmative matter set up by the answer, is not proven, and is entitled to no consideration, the cause having been regularly at issue, and not set for hearing on bill and answer. The court, therefore, in all the circumstances as shown and proven, should have granted the applicant a new trial at law.

Mr. Justice CLAYTON delivered the opinion of the court.

This was a bill filed to set aside a judgment at law, obtained against the complainant by the respondent, and to get a new trial. The ground alledged for the relief was fraud on the part of the plaintiff at law, by which he recovered a judgment, when, in fact, the complainant owed him nothing. The fraud was alledged to consist in this: that the plaintiff at law had told complainant that he had dismissed his suit, for which reason he paid no farther attention to it, and a judgment by default had thus been rendered against him. The plaintiff at law had afterwards died. The allegations are all denied in the answer of the administrator, and reasons given why the respondent believes them to be untrue.

There is no evidence which directly supports the bill. One witness states that Merryman in his life, told him that he either had or would dismiss the suit, and go to New Orleans to attach the cotton of Land. The witnesses all prove that the money was due to the plaintiff, either from the defendant or his father; the only controversy was, which of the two was the debtor?

The jurisdiction of equity to grant a new trial at law, on a case in which the judgment was obtained by fraud, is undoubted. But in such case the complainant must clearly establish the existence of the fraud, and according to many of the decisions must show that he has himself been guilty of no laches, and that he has done everything that could reasonably be required of him to obtain relief at law. That the complainant should have taken a bare statement of his adversary, as to the

Land *v.* Elliot.

dismission of the suit—should have made no inquiry to ascertain its truth, and retained no evidence to establish that the statement was made, seems to show great negligence upon his own part.    But to give no weight to this circumstance, there is no proof that the plaintiff at law ever made the statement which is alledged to the complainant.    The only witness on the subject speaks of a conversation, which, for anything that appears, was never made known to the complainant before the judgment was rendered, and even he leaves it doubtful, whether it was anything more than an expression of intention to dismiss the suit at an after period, and resort to a more summary remedy.    It would certainly very much impair the sanctity of judgments, and the faith we repose in them, if they could be set aside upon testimony so inconclusive as this.

For the reason that the complainant has not sustained his case by proof, the decree of the court below, dismissing the bill, is affirmed.